**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 95-20584
_____


NATIONAL STEEL CORPORATION,

                                    Plaintiff-Appellant,

                    VERSUS


          SCURLOCK PERMIAN CORPORATION,

                                    Defendant-Appellee.

_____

          Appeal from the United States District Court
              For the Southern District of Texas
                       (CA-H-93-182)
_____

                       July 2, 1996
Before GARWOOD, DAVIS, and DeMOSS, Circuit Judges.

DAVIS, Circuit Judge:[*]

     National Steel Corporation (National) sued Scurlock Permian

Corporation seeking to recover lost Department of Energy (DOE)

refunds because defendant's predecessor-in-interest (Permian) had

negligently waived National's rights to those refunds.[1]  After a

three-day bench trial, the district court issued a take-nothing

judgement against National.  We affirm.

_____

     [*]Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

     [1]  National also alleged breach of fiduciary duty, but
abandoned this argument on appeal.  This argument, therefore, is
not before us.

This case arises from the interplay between two restitution programs instituted by the DOE to distribute sums collected from oil producers which had overcharged users in violation of DOE regulations. The DOE established the first program, known as the Subpart V program, in 1979. See 10 C.F.R. Part 205, Subpart V. Under this program, the DOE was to place in escrow sums it collected in enforcement actions. Petroleum end-users injured by producer overcharges could then seek restitution by filing claims against the fund. The second program, the Surface Transporters Stripper Well Escrow Fund (Stripper Fund), was one of several escrows created pursuant to the settlement of In re Department of Energy Stripper Well Exemption Litigation, a massive interpleader action. See In re Dep't of Energy Stripper Well Exemption Litig., 653 F. Supp. 108 (D. Kan 1986). The Stripper Well settlement resolved claims for several types of refunds, including refunds under the Subpart V program. A successful Stripper Fund claimant, therefore, was required to withdraw "all covered claims for funds based upon Alleged Crude Oil Violations" including Subpart V claims.

On September 12, 1986, Permian executed a Stripper Fund claim form which included a waiver and release. Permian agreed to forego "all [its] existing and future claims" under various federal restitution programs, including Subpart V. This form also provided that it was "binding upon the Grantor [Permian], its parents, subsidiaries, affiliates, successors and assigns." It defined its

2

terms as having the same meaning as those used in the settlement agreement. And it provided that execution of the claim form was the equivalent of signing the Stripper Well settlement. Based on this language and on the documents they received in the DOE's Stripper Well Information Packet, Permian officials understood that the company was waiving its own claims to the listed restitution programs, including Subpart V funds, and that Permian's "parents, subsidiaries, affiliates, successors and assigns" were bound by Permian's release of Permian's own claims. The DOE, a federal district court, and the Temporary Emergency Court of Appeals have since construed the Stripper Fund claim form very differently. The current interpretation is that the Grantor waives not only its claims for Subpart V refunds but also the claims of its related entities, including "affiliates," even when the affiliates' claims relate to completely separate purchases of overpriced fuel. E.g., Mid-America Dairyman, Inc. v. Herrington, 878 F.2d 1448 (Temp. Emer. Crt. App. 1988). In 1986, both the appellant, National Steel, and Permian were subsidiaries of the same corporation, National Intergroup, Inc. National Steel and Permian were therefore "affiliates" as that term is defined in the Stripper Well settlement agreement.

Four and a half years after Permian had executed the Stripper Fund claim form, the DOE denied Subpart V claims filed by National Steel. The DOE explained that National Steel no longer was entitled to Subpart V refunds because the claim form Permian had executed wiped out the Subpart V rights of Permian's affiliates,

3

including rights belonging to National Steel.

National Steel responded by filing suit against Scurlock Permian Corporation to recover for the Subpart V refunds National had lost. National Steel alleged that Permian had negligently relinquished National Steel's claims by signing the DOE claim form. After a three-day trial, the district court rejected National's claims. The district court accepted the DOE's interpretation of the claim form and concluded that Permian had waived National's rights. The court, nonetheless, determined that Permian owed no duty of reasonable care to National in this circumstance. The court found further that, even if Permian owed a duty to National Steel, Permian had breached no duty. The district court specifically found that Permian attorneys and agents had acted as prudent persons would in the management of their own businesses. Finally, the court determined that the statute of limitations barred National's suit.

## II.

Although this case presents difficult duty and limitations issues, we need not address them. The district court found that, even if Permian did owe its one-time affiliate a duty of reasonable care in this circumstance, it did not breach this duty. This finding is not clearly erroneous.

Permian employees did not interpret the Stripper Fund claim form as waiving its related entities' rights to DOE refunds, unless the refunds related to the same transactions on which Permian had

4

based its claim.[2]  This alleged mistake by Permian officials, however, does not establish that they acted unreasonably.  The release provision in the claim form provided that "<u>Grantor</u> hereby releases, and waives all <u>Grantor's</u> existing and future claims."  And the information letter included in the DOE's <u>Stripper Well</u> Refund Information Packet stated that "by receiving a refund from any of the Stripper Well escrows <u>you</u> waive <u>your</u> right to receive a refund from other crude oil overcharge funds."  At the time Permian submitted its Stripper Fund claim form, no court had interpreted the document as waiving affiliates' Subpart V rights.  Under the circumstances, the district court did not clearly err in finding that Permian employees were not negligent in failing to predict the ultimate interpretation of these provisions.

In sum, the district court did not commit clear error in finding that Permian officials acted reasonably.

AFFIRMED.

---

[2]  Indeed it is not clear to us how Permian would have the power to waive rights of a separate entity, National.